IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

| | |
|---|---|
| BETTY DEAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 11-CV-1194 |
| | ) |
| DUNLAP COMMUNITY UNIT | ) |
| SCHOOL DISTRICT #323, | ) |
| JAY MARINO, and LISA PARKER, | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This matter comes before the Court for a Report and Recommendation on Defendants Memorandum in Support of its Rule 12(b)(6) Motion to Dismiss Plaintiff's Complaint (d/e 5) (Motion) filed by Defendants Dunlap Community Unit School District #323 (District), Jay Marino, and Lisa Parker.[1] For the reasons set forth below, the Court Recommends that the Motion should be ALLOWED in part. The Court recommends dismissing the claims against Marino and the state law claims against the District and Parker, but recommends not dismissing the federal due process claim against Parker and the District.

---

[1] The parties and the Court have deemed this filing to be a combined motion and memorandum. In the future, parties are to file separate motions and supporting memoranda as required by the Local Rules. See Local Rule 7.1(B).

## STATEMENT OF FACTS

Plaintiff Betty Dean alleges that she worked for more than fourteen years as a school bus driver for the District. Dean alleges that she entered into an employment contract with the District on May 26, 2010. Dean alleges,

> Betty Dean had been a bus driver for the School District #323 (School District) for 14 years. On May 26, 2010 Dean entered into a contract with the School District for her 15th year of employment. The contract contained a schedule of rates of pay for the routes and duties performed and stated,
>
>> Betty Dean is offered employment as a bus driver for Dunlap Community Unit School District #323 for the 2010-11 school year under the conditions and rates described above.
>
> Dean accepted the offer of employment by driving the school bus for her 15th year at the times provided and was paid the rates states in the contract for that work. There were no other conditions stated in the contract.

Complaint, ¶ 8.

During the school year, Dean began having problems with the middle school and high school students riding on her bus. The students were changing seats while the bus was moving. She warned the students of the dangers of changing seats while the bus was moving. On Thursday, September 28, 2010, at approximately 3:50 p.m., Dean performed what the

Complaint calls a "controlled stop."[2] Dean drove the bus on school property at the speed of 5 miles per hour, "and then made a sudden stop to demonstrate the effect of the force from the stop on the students." Id. ¶ 12.

The District's Director of Transportation Bill Schroeder observed this action. Schroeder knew that another driver performed a similar stop two weeks earlier. Schroeder later informed Dean that a student on her bus had hemophilia and was injured on September 28, 2010, when she made the controlled stop. Dean did not know that any of her students had such a health condition. Id. ¶¶ 12-14.

On Monday, October 1, 2010, Defendant Parker, an Assistant Superintendent for the District, sent a letter to Dean placing her on administrative leave pending an investigation of the September 28th stopping incident. On October 7, 2010, Parker had a meeting with Dean regarding her employment. Parker gave Dean an ultimatum, either Dean could resign and the District would not contest her unemployment benefit claim, or the District would fire Dean and contest her claim for unemployment benefits. Id. ¶ 16. Dean submitted her written resignation to Parker on October 7, 2010. Id. ¶ 18.

---

[2]The Court takes judicial notice that September 28, 2010, was a Thursday and October 1, 2010, was a Monday.

Dean went to see an attorney. Her attorney told her that a person who voluntarily resigns is not able to receive unemployment benefits under Illinois law. Id. ¶ 19. The Illinois Unemployment Insurance Act (Illinois Act) states, in part,

> A. An individual shall be ineligible for benefits for the week in which he or she has left work voluntarily without good cause attributable to the employing unit . . . .

820 ILCS 405/601.

On October 11, 2010, Dean sent a letter to Parker withdrawing her resignation based upon her attorney's advice that she was not entitled to unemployment benefits. Dean also demanded the District perform its duties under her employment contract, as she was willing and able to return to work. Dean further stated that she had not breached her duties under the contract. Complaint, ¶ 19.

On October 13, 2010, Dean's attorney sent a letter to the District demanding performance of Dean's employment contract or a hearing. On October 15, 2010, the District's attorney responded that the resignation was effective on receipt and no hearing was required. Id. ¶¶ 20-21. Dean's attorney then sent a letter asking for confirmation that,

> (A) it is the decision of the Board of the School District that it will not hold a hearing on the existence of Mrs. Dean's contract of employment and the termination of that contract by whatever

means and (B) provide any records such as minutes or other documentation the Board has acted on Betty Dean's employment.

Id. ¶ 22. Dean's attorney did not receive a definitive response. Id. ¶ 24.

Dean further alleges,

The policy making agents for Dunlap School District are the Board of Education, Jay Marino, its Superintendent who is responsible for the day to day management of the School District, and Lisa Parker Assistant Superintendent on the matters for which she is assigned responsibility.

Id. ¶ 23.

Dean alleges that either the Board decided to refuse Dean's request for a hearing, or Marino and the Board's attorney jointly decided to refuse the requested hearing. Id. ¶¶ 24, 26.

Based on these allegations, Dean asserts a federal claim against all of the Defendants for denial of her property without due process, a state law claim against the District for breach of contract, and state law claims against Marino and Parker for intentional interference with the contract between Dean and the District and intentional interference with Dean's prospective economic advantage for future renewals of her employment contract. Id. ¶¶ 28-30. The Defendants move to dismiss these claims.

## LEGAL STANDARD

For purposes of the Motion, the Court must accept as true all well-pleaded factual allegations contained in the Complaint and draw all

inferences in the light most favorable to Dean. Hager v. City of West Peoria, 84 F.3d 865, 868-69 (7th Cir. 1996); Covington Court, Ltd. v. Village of Oak Brook, 77 F.3d 177, 178 (7th Cir. 1996). The Court may also consider documents attached to the Complaint and documents attached to the Motion if the documents are referred to in the Complaint and are central to the plaintiff's claim. Fed. R. Civ. P. 10(c); 188 LLC v. Trinity Industries, Inc., 300 F.3d 730, 735 (7th Cir. 2002). When read in that light, the Complaint must set forth a short and plain statement of the claims showing that Dean is entitled to relief. Fed. R. Civ. P. 8(a); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 559-63 (2007); Airborne Beepers & Video, Inc. v. AT & T Mobility LLC, 499 F.3d 663 (7th Cir. 2007). In doing so, the allegations must plausibly suggest that Dean is entitled to relief. Twombly, 550 U.S. at 569 n.14. Allegations of bare legal conclusions or labels are not sufficient. Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009).

## ANALYSIS

Dean alleges one federal due process claim and three state law claims, one for breach of contract, one for tortious interference with contract, and one for tortious interference with prospective economic advantage. The Court will address each claim in order.

I.   Due Process

To allege a due process claim, Dean must allege: (1) she had a property or liberty interest at stake; and (2) each defendant, acting under color of law, denied her of that property or liberty interest without due process.  See Strasberger vs. Board of Educ., Hardin County Community Unit School Dist. No. 1, 143 F.3d 351,358 (7th Cir. 1998).  Dean argues that she has alleged a property interest in her employment.  The Defendants argue that Dean failed to allege a property interest in her employment and failed to allege a denial of any interest in her employment.

A property interest in employment may arise from many sources, including an employment contract with a state actor.  To create a property interest, the contract must create a legitimate claim of entitlement to employment, not just a hopeful expectation. Crim vs. Board of Educ. of Cairo School Dist. No. 1,147 F.3d 535, 545 (7th Cir. 1998).  In Illinois, employment for an indefinite term is presumed to be "at-will."  Moss v. Martin, 473 F.3d 694, 700 (7th Cir. 2007).  An employee in an at-will employment relationship has no legitimate expectation of continued employment, and so, no property interest in that employment.  Rujawitz v. Martin, 561 F.3d 685, 688-89 (7th Cir. 2009).  Employment for a stated term that can only be terminated for cause or other limited conditions, however, may create a legitimate expectation in continued employment for the term,

and so, a property interest in that employment. Vail vs. Board of Educ. of Paris Union School Dist. No. 95, 706 F.2d 1435, 1438 (7th Cir. 1983).

The issue is whether Dean's alleged employment contract was at-will or for a stated term. The interpretation of a contract is a matter of law in Illinois. GNB Battery Technologies, Inc. v. Gould, Inc., 65 F.3d 615, 621(7th Cir. 1995). When interpreting a contract, the Court must give meaning to all of the stated terms. Id. at 622. Absent an ambiguity, the Court must give effect to the plain meaning of all of the terms of the agreement. Atlantic Mut. Ins. Co. v. Metron Engineering and Const. Co., 83 F.3d 897, 898 (7th Cir. 1996). If the language of the agreement is susceptible to more than one meaning, it is ambiguous. If the contractual documents are ambiguous, the Court may consider extrinsic evidence. Gallagher v. Lenart, 226 Ill.2d 208, 233, 874 N.E.2d 43, 58 (Ill. 2007). The ultimate purpose of contract interpretation is to give effect to the intention of the parties. Thompson v. Gordon, 241 Ill.2d 428, 441, 948 N.E.2d 39, 47 (Ill. 2011).

The Complaint, unfortunately, contains many legal conclusions about this alleged contract, but very few factual allegations.[3] The Court ignores the legal conclusions and focuses only on the factual allegations. Iqbal,

---

[3] For example, the statement in Complaint ¶ 8, "There were no other conditions stated in the contract," is a bare legal conclusion that the Court ignores.

**Page 8 of 20**

129 S.Ct. at 1949. The factual allegations regarding the employment contract are:

(1) Dean drove a school bus for the District for fourteen years;

(2) A document exists which contains, "a schedule of rates of pay for the routes and duties performed" and also contains the quoted sentence,

> Betty Dean is offered employment as a bus driver for Dunlap Community Unit School District #323 for the 2010-11 school year under the conditions and rates described above;

(3) Dean worked for the District as a bus driver at the beginning of the 2010-11 school year; and

(4) Dean was paid according to the schedule of pay in the referenced document.

Complaint, ¶ 8.[4] The factual allegations that Dean worked at the beginning of the 2010-11 school year and was paid shows an employment relationship based on the rates of pay in the referenced document. The quoted sentence could indicate either an intent to employ Dean for a stated term, the school year, or some other intent, such as an intent only to set

---

[4] The Court cannot construe the quoted document as a whole because Dean did not append the document to the Complaint. Dean is not required to do so. The Federal Rules permit, but do not require, attaching relevant documents to pleadings. See Fed. R. Civ. P. 8(a) and 10(c). The Defendants did not supply the document either. The Court, therefore, cannot make any finding about the meaning of the document. The Court can only address whether Dean alleges enough to state a claim.

**Page 9 of 20**

her salary for her continued employment during the 2010-11 school year. Setting compensation in terms of a monthly or annual salary generally does not overcome the presumption of at-will employment under Illinois law. See Mann v. Ben Tire Distributors, Ltd., 89 Ill.App.3d 695, 697, 411 N.E.2d 1235, 1236 (Ill.App. 4th Dist. 1980).

At this point, the Court must read the allegations in the light most favorable to Dean. When read in that light, the Court must assume for purposes of the Motion that the District hired Dean for a stated term. Dean, thus, alleges that she had a property interest in her employment.

Dean must also allege that the Defendants took an adverse action that denied Dean her property without due process. Due process in employment generally requires notice of the charges and an opportunity to respond before the adverse action. Cleveland Board of Educ. v. Loudermill, 470 U.S. 532, 546 (1985). In this case, Defendant Parker gave Dean an ultimatum on October 7, 2010: resign or be fired. Parker did not give Dean an opportunity to respond to the charges. Parker effectively terminated Dean's employment without any process, according to the Complaint.

The Defendants argue that Dean voluntarily resigned. The allegations, however, show that she did not have a choice. Her

employment was over – she could resign or be fired – but her employment was over.  In such circumstances the termination is not voluntary,

> Whenever a person is severed from his employment by coercion the severance is effected not by his own free will but the will of a superior.  A person who is forced to resign is thus in the position of one who is discharged, not of one who exercises his own will to surrender his employment voluntarily.

Piper v. Board of Trustees of Community College Dist. No. 514, 99 Ill.App.3d 752, 757, 426 N.E.2d 262, 265 (Ill. App. 4th Dist. 1981) (quoting Moreno v. Cairns, 20 Cal.2d 531, 534-35, 127 P.2d 914, 916 (Cal. 1942)).  The allegations, read favorably to Dean, show that Parker denied Dean her property interest in her employment without due process.  Dean states a claim against Parker in her individual capacity.[5]

The District, as a municipality, is not vicariously liable under § 1983 for the actions of its employees.  Monell v. Department of Social Services of City of New York, 436 U.S. 658, 691 (1978).  The District is only liable if Parker terminated Dean pursuant to a policy, practice or custom of the District or if Parker acted with final policymaking authority for the District when she fired Dean.  Gable v. City of Chicago, 296 F.3d 531, 537 (7th Cir. 2002).  Dean argues that Parker acted with final policymaking authority.  Plaintiff's Response to Defendants' Motion to Dismiss (d/e 9), at 7.

---

[5]The Defendants ask the Court to dismiss the official capacity claim against Parker as redundant to the claim against the District.  Motion, at 12.  Dean, however, only sued Parker in her individual capacity.  Complaint, ¶ 7.

Final policy making authority is determined by state law. Kujawski v. Board of Com'rs of Bartholomew County, Ind., 183 F.3d 734, 737 (7th Cir. 1999). Persons with final policymaking authority in a municipality can set rules and policies of general application with respect to the action at issue. See Vodak v. City of Chicago, 639 F.3d 738, 747 (7th Cir. 2011); Valentino v. Village of South Chicago Heights, 575 F.3d 664, 676 (7th Cir. 2009); Eversole v. Steele, 59 F.3d 710, 715 (7th Cir. 1995); Auriemma v. Rice, 957 F.2d 397, 399 (7th Cir. 1992). Final policymaking authority may also be delegated. Kujawski, 183 F.3d at 737.

The facts alleged indicate that Parker had the authority to fire Dean. The delegation of authority to hire and fire, however, does not provide a basis for municipal liability,

> [T]he mere unreviewed discretion to make hiring and firing decisions does not amount to policymaking authority. There must be a delegation of authority to set policy for hiring and firing, not a delegation of only the final authority to hire and fire.

Kujawski, 183 F.3d at 739. The Complaint also alleges that Parker had policy making authority, "on the matters for which she is assigned responsibility." Complaint, ¶ 23. The factual content of this allegation is thin, but is sufficient for purposes of the Motion to allege a basis for municipal liability. Dean, thus, states a due process claim against the District.

Dean fails to allege a claim against Marino for the October 7, 2010, termination of her employment. An individual defendant, such as Marino, must be personally involved in the wrongful conduct in order to be liable. Palmer v. Marion County, 327 F.3d 588, 594-95 (7th Cir. 2003). Dean does not allege that Marino had any involvement in the October 7, 2010, termination. Dean, thus, fails to allege a due process claim against Marino.

Dean argues that she still had a property interest in her employment after October 7, 2010, because Parker induced her to tender her resignation through fraud or mutual mistake. Dean argues that as a result, her resignation was void. She argues that the District and Marino wrongfully refused to accept her rescission of her resignation without due process.

The Complaint, however, does not allege either fraud or mutual mistake.[6] Fraud must be pleaded with particularity. Fed. R. Civ. P. 9(b). Dean must allege that Parker knowingly made a material misrepresentation of material fact with the intent to induce Dean to take some action, and Dean reasonably relied on the misrepresentation, and acted to her detriment. James v. Lifeline Mobile Medics, 341 Ill.App.3d 451, 456, 792 N.E.2d 461, 465 (Ill.App. 4th Dist. 2003). Dean alleges that Parker stated

---

[6] The Complaint states legal conclusions that the resignation was induced by fraud or mutual mistake, but the Court, again, ignores such legal conclusions for purposes of a motion to dismiss. Iqbal, 129 S.Ct. at 1949.

that Dean could resign and the District would not contest her unemployment benefit claim, or the District would fire Dean and contest her claim for unemployment benefits.  Complaint, ¶ 16.  Dean does not allege that the statement is false.  Dean does not allege whether she ever filed an unemployment claim, let alone whether the District contested it.  Dean's allegations do not allege fraud.

Dean's allegations also do not allege a mutual mistake of fact.  To allege a mutual mistake of fact, Dean must allege that Dean and Parker made a mutual mistake of fact as to a material matter affecting the substance of the transaction.  See Cameron v. Bogusz, 305 Ill.App.3d 267, 711 N.E.2d 1194, 1198 (Ill.App. 1st Dist. 1999).  Dean argues that she and Parker mistakenly assumed that Dean would be eligible for unemployment benefits if she resigned.

The factual allegations in the Complaint, however, do not support the inference that Dean was ineligible for unemployment benefits after her termination of October 7, 2010.  The Illinois Act, quoted above, states that a person is not entitled to unemployment benefits if she voluntarily left her employment without good cause.  820 ILCS 405/601.  Dean could receive benefits if she left for good cause.  Good cause results from circumstances that produce pressure to terminate employment that is both real and substantial and that would compel a reasonable person under the

circumstances to act in the same manner.  Collier v. Illinois Dept. of Employment Sec., 157 Ill.App.3d 988, 992, 510 N.E.2d 623, 626 (Ill.App. 1st Dist. 1987).  The facts alleged show that Parker forced the termination of Dean's employment;  she could resign or be fired.  These allegations show that Dean had good cause.  Alternatively, these allegations show that Dean did not leave voluntarily.  Piper v. Board of Trustees of Community College Dist. No. 514, 426 N.E.2d at 265.  Under either analysis, the allegations in the Complaint do not show that Dean was ineligible for unemployment benefits after she resigned.  The factual allegations do not show that Parker and Dean were mistaken.  The Complaint, thus, fails to allege some right of rescission.

Rather, the Complaint alleges that Parker had final policymaking authority with respect to firing Dean, and Parker terminated Dean's employment on October 7, 2010.  Dean had the option of resigning or being fired, but her employment was terminated on that date.  The subsequent machinations by Dean and her attorney, and the District's refusal to entertain those machinations, did not affect Dean's property interest in her employment because her employment was gone on October 7, 2010.  The Complaint states a due process claim against Parker and the District for denial of property without due process, but does not state a § 1983 claim against Marino.

2. <u>Breach of Contract</u>

To state a breach of contract claim, Dean must allege formation of a contract, Dean's performance of her obligations under the contract, breach by the other party to the contract, and damage. <u>Allstate Ins. Co. v. Winnebago County Fair Ass'n, Inc.</u>, 131 Ill.App.3d 225, 233, 475 N.E.2d 230, 239 (Ill.App. 2$^{d}$ Dist. 1985). As explained above, Dean alleges a contract between Dean and the District.[7]

Dean, however, does not allege that she performed her duties under the contract. Dean alleges that the District terminated her employment because Dean made a "controlled stop," meaning she intentionally and abruptly stopped a school bus full of children to teach the children a lesson and thereby injured a child on the bus. Dean does not allege that the District authorized bus drivers to conduct such controlled stops or that conducting controlled stops were consistent with her duties under her employment contract.[8]

Generally, a plaintiff may not need to plead her own performance of a contract in any great detail. <u>See</u> Fed. R. Civ. P. 10(c) (plaintiffs may allege

---

[7]Dean does not allege a contract between herself and either Parker or Marino, so she does not allege a breach of contract claim against either of them.

[8]Dean does not allege her duties under the contract. The document that contained the quoted alleged offer of employment also contained a list of duties. <u>Complaint</u>, ¶ 8. Dean, however, does not allege that conducting a controlled stop under these circumstances is consistent with those duties.

generally that all conditions precedent have been met). A plaintiff, however, may plead sufficient facts to plead herself out of court. See Tamayo v. Blagojevich, 526 F.3d 1074, 1086 (7th Cir. 2008). In this case, Dean alleges that she injured a child in her care while driving a school bus by intentionally stopping the bus abruptly. She alleges she was fired for taking this action. Dean's allegations, if anything, indicate that the termination of her employment as a school bus driver was proper. Dean must allege facts, which if true, would plausibly establish that her controlled stop was within the scope of her duties or otherwise authorized by the District. Otherwise, the facts alleged do not plausibly show that she performed her duties under the employment contract, and so, do not plausibly show that the District breached the employment contract by terminating her employment.

Dean alleges that Schroeder, the District's Transportation Supervisor, saw the controlled stop and that Schroeder saw another driver perform a similar stop two weeks earlier. The Complaint, however, does not allege how Schroeder responded to these events. Schroeder may have approved of controlled stops to maintain discipline; he may have disapproved and reported Dean to Parker for appropriate discipline; or he may have responded in some other way. The Complaint does not say. The Complaint further does not allege whether the other driver was disciplined

or fired for making a controlled stop. The allegations about Schroeder and the other bus driver do not say anything about whether Dean breached her duties by performing the controlled stop. Dean fails to allege that she performed the duties of her employment agreement, and so, fails to allege that the District breached the employment contract by terminating her employment.[9]

3. <u>Tortious Interference with Contract</u>

To state a claim for tortious interference with contract against Parker and Marino, Dean must allege: (1) the existence of a contract; (2) defendant's knowledge of that relationship; (3) defendant's purposeful interference with that relationship to induce the other party to breach the contract; (4) a breach of the contract by the other party; and (5) damage. <u>Kraft Chemical Co. v. Illinois Bell Telephone Co.</u>, 240 Ill.App.3d 192, 608 N.E.2d 243, 247 (Ill.App. 1st Dist. 1992). Dean fails to state a claim for tortious interference with contract because she fails to allege that the District breached the employment agreement with her. She, therefore, fails to allege that either Parker or Marino induced that breach.

---

[9]The failure to allege a breach of contract does not affect the due process claim. According to Dean's allegations, she was entitled to due process before losing her job even if she deserved to lose her job. A party may proceed with a due process claim even if she is not entitled to any compensatory damages. <u>Carey v. Piphus</u>, 435 U.S. 247, 266 (1978).

4. <u>Tortious Interference with Prospective Economic Advantage</u>

To state a claim for tortious interference with a prospective economic advantage, Dean must allege: (1) a reasonable expectation of entering into a valid relationship that will result in an economic advantage; (2) the Defendants' knowledge of her expectation; (3) the Defendants' purposeful interference that prevents Dean's expectation from ripening into a valid economic relationship; and (4) damage. <u>Callis, Papa, Jackstadt & Holloran, P.C. v. Norfolk and Western Ry. Co.</u>, 195 Ill.2d 356, 369, 748 N.E.2d 153, 161 (Ill. 2001). Dean alleges an employment relationship with the District for more than fourteen years and an expectation to work there for years to come. She alleges that Parker and Marino intentionally used their authority as Assistant Superintendent and Superintendent to cause the District to terminate Dean's employment, and she lost the possibility of future employment because of that termination.

Dean, however, fails to allege her expectation of continued employment was reasonable after she conducted the controlled stop on September 28, 2010. As explained above, Dean must allege facts showing that conducting controlled stops was within her duties as a school bus driver. The facts alleged do not plausibly show this at this point. Based on the facts alleged, Dean did not have a reasonable expectation of continued employment after she decided to conduct the controlled stop and thereby

injured a child. Because Dean fails to allege facts to show that she had a reasonable expectation of employment after the September 28, 2010 stop, she fails to allege that Parker and Marino's subsequent actions were not tortious. She therefore fails to state a claim.

WHEREFORE, the Court recommends that Defendants' Memorandum in Support of its Rule 12(b)(6) Motion to Dismiss Plaintiff's Complaint (d/e 5) should be ALLOWED in part. The claims against Defendant Jay Marino should be dismissed, and the state law claims against Defendants Dunlap Community Unit School District #323 and Lisa Parker should be dismissed. The Motion should otherwise be DENIED.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk of the Court within fourteen days after service of an ECF copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file a timely objection will constitute a waiver of objections on appeal. See Video Views, Inc. v. Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986). See Local Rule 72.2.

ENTER: November 7, 2011

     *s/ Byron G. Cudmore*
BYRON G. CUDMORE
UNITED STATES MAGISTRATE JUDGE